Match Corporation of America, Appellee, v. Acme Match Corporation, Appellant.

Gen. No. 38,464.

Opinion filed April 22, 1936.

Moses, Kennedy, Stein & Bachrach, Edwin A. Halligan and Bernard W. Mages, all of Chicago, for appellant; Julius Moses, Edwin A. Halligan and R. Weyand, of Chicago, of counsel.

McInerney, Epstein & Arvey, of Chicago, for appellee; John L. McInerney, Louis M. Mantynband and Sidney Zatz, all of Chicago, of counsel.

Mr. Justice Denis E. Sullivan delivered the opinion of the court.

This is an appeal from a decree of the circuit court entered in favor of the plaintiff and against the defendant for the violation of a contract for the manufacture and sale of matches. The contract was dated July 9, 1934, and was to endure for a period of five years. It provided that the defendant was to manufacture and sell to plaintiff all the book matches re-

quired and sold by the plaintiff in the conduct of its business. It further provided that the defendant would not sell book matches in competition with the plaintiff and would not sell to any one for purposes of resale except jobbers; that plaintiff would resell only at list prices; that both parties would not underquote each other; that plaintiff would advance to defendant $2,500 to be evidenced by certain notes, $1,000 of which advance was to be retained by the defendant for one year as security against losses on special printing orders or on defaults in plaintiff's payments and $1,500 of which to be repaid by a rebate of $1.50 per case on the first 1,000 cases purchased, the portion of the $1,500 not yet repaid by way of such rebate to be subject to return on 30 days' notice in either cash or matches at the option of the defendant. The plaintiff alleged the various breaches of the contract and sought damages and an injunction. Prior to this the plaintiff had confessed judgment in the municipal court of Chicago on the two said notes given for the $2,500 advanced by the plaintiff, and the defendant filed a petition for relief from the said judgment by confession. The decree was entered upon the report of a master who fixed the plaintiff's damages at $879.00 and costs and recommended that the defendant corporation, its agents, officers and employees be permanently enjoined from doing the following:

"... from selling or disposing of book matches bearing the name of the plaintiff; from soliciting and accepting orders from customers or accounts of the plaintiff; from interfering and competing with the business of the plaintiff and from directly or indirectly selling matches to any person or firm for the purpose of reselling the same to any consumer, provided, however, the defendant's right to sell to jobbers, advertising novelty distributors, paper and advertising distributor jobbers, shall not be restrained." By an

amendment to the decree the court found that the defendant had paid all that was due on the municipal court judgment except $63.58 and ordered that upon the payment of $63.58 the plaintiff "shall satisfy in whole the said judgment in the Municipal Court." Plaintiff paid all that was due on the municipal court judgment based on the note.

The plaintiff contends that the agreement constituted a valid and enforceable contract; that the defendant violated the terms of the contract by failing to fill certain orders given by the plaintiff for book matches and by selling matches to persons not within the excepted class; that the match business is one involving secret formula and unique machinery and the plaintiff was unable to procure matches with the imprint of the name of the plaintiff company from other persons; that because of the failure of the defendant to fill plaintiff's orders under the contract, and the sales of defendant to other persons, the plaintiff was being injured irreparably and was entitled to damages for losses suffered and to an injunction restraining the defendant from making sales to other persons in violation of the terms of the contract.

The defendant contends first that the contract is invalid for the reasons that: (a) It is lacking in mutuality of obligation; (b) The contract is in unlawful restraint of trade; (c) The promises of plaintiff to sell at list prices and of both parties not to underquote each other, made the contract void under the provisions of the Illinois Anti-Trust Law. The defendant further contends that by suing in the municipal court for a return of the money deposited with the defendant as security against losses on the contract, the contract was thereby rescinded; that plaintiff cannot recover damages for failure of defendant to deliver matches unless it shows that the market price of such matches is higher than the price fixed under the contract; that

the injunction is invalid because it is unlimited as to time.

There does not seem to be much dispute as to the o facts in this case.

The plaintiff, Match Corporation of America, an Illinois corporation, was organized on June 20, 1934.

The principal complaint made by plaintiff against the defendant is that after entering into the contract, the defendant found out who the plaintiff's customers were and proceeded to make the matches and sell to them direct and thereby eliminated the plaintiff from the transaction. The defense to this action which was a violation of the control on the part of the defendant is stated by its counsel on page 17 of its brief, as follows:

"While the defendant did sell matches to other persons during the time between the making of the contract and the institution of this suit, evidence was offered, and not contradicted, to show that the matches sold to persons other than the plaintiff were of an inferior grade and would not have been acceptable to the plaintiff."

Much evidence was heard as to what was done by the various parties in carrying out this contract and from a review of the same we think that both the master and the chancellor made a proper deduction as to the facts from the testimony submitted, so that leaves for our consideration the contention made by the defendant that the contract as entered into was in violation of the law.

As to the legality of the contract it is first contended by defendant that "An agreement by which one party agrees to sell all of a commodity the other may order, and the other party agrees to buy such a quantity of the commodity as the purchaser may resell during a fixed period of time, does not constitute an enforceable contract where previous to the making of the

agreement the purchaser had never sold any of the commodity.''

The contract in this case provides that the party of the second part agrees to manufacture book matches for the party of the first part and the party of the first part agrees to purchase book matches from the party of the second part upon the following terms and conditions:

''. . . Second: So long as the party of the second part shall perform its covenants herein, the party of the first part will purchase all the book matches required and sold by it, in the conduct of its business, from the party of the second part. . . .''

We cannot see why any valid distinction should be made where a contract is entered into between two persons concerning the purchase of goods because of the fact that one of the parties to the contract had not been in business before. This type of contract is what is known in law as a ''requirement'' contract and calls for the manufacture and delivery by the defendant to the plaintiff of the amount of goods that it would require and sell to its trade. It is the usual business contract entered into between business men when they are estimating and purchasing their supplies for the future. As was said in *Minnesota Lumber Co. v. Whitebreast Coal Co.*, 160 Ill. 85, at page 93:

''The word, 'requirement,' evidently has the same meaning as the word, 'needs.' The amount of coal, which was 'required' for the business of that season, was the amount of coal, which was 'needed' in the business of that season.

''If the word, 'requirements,' as here used, is so interpreted as to mean that appellee was only to furnish such coal as appellant should require it to furnish, then it might be said, that appellant was not bound to require any coal unless it chose, and that, therefore, there was a want of mutuality in the contract. But the

rule is, that, where the terms of a contract are susceptible of two significations, that will be adopted which gives some operation to the contract, rather than that which renders it inoperative. (*Thrall v. Newell*, 19 Verm. 202; *Evans v. Saunders*, 8 Porter, 497.) A contract should be construed in such a way as to make the obligations imposed by its terms mutually binding upon the parties, unless such construction is wholly negatived by the language used." *Brown v. Rounsavell*, 78 Ill. 589; *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102.

It is next contended by the defendant that a contract by which one party agrees to sell to the other party and not to sell to other persons and the other party agrees to buy such a quantity of a commodity as he may resell during a fixed period of time, cannot be enforced against the purchaser in equity by specific performance or injunction and therefore the purchaser will be denied such relief against the seller on the ground of lack of mutuality of remedy. In this case the remedy that was granted by the trial court, after making a finding of the various defaults of the defendant in violation of the contract and giving an accounting of the damages sustained by the plaintiff, in its decree said:

"It Is Further Ordered, Adjudged and Decreed that the defendants, its agents, officers and employees be and they are hereby restrained and enjoined from selling or disposing of book matches bearing the name of the plaintiff; from soliciting and accepting orders from customers or accounts of the plaintiff; from interfering and competing with the business of the plaintiff and from directly or indirectly selling matches to any person or firm for the purpose of reselling the same to any consumer, provided, however, that defendant's right to sell to jobbers, advertising novelty distributors, paper and advertising distributor jobbers shall not be restrained."

This order merely prevents the defendant from manufacturing matches and selling them to plaintiff's customers in violation of its contract. The plaintiff is not asking for specific performance in the sense that he is trying to compel the defendant to manufacture the matches and the court would not enter such an order because of its inability to supervise the doing of such intricate work by the defendant, but the relief can properly be granted by preventing the defendant from manufacturing matches with the plaintiff's imprint thereon and selling them to the plaintiff's customers and thereby interfering with and damaging plaintiff's business.

As was said in *Southern Fire Brick & Clay Co. v. Garden City Sand Co.*, 223 Ill. 616:

"An agreement by a party to a contract not to operate any other fire clay grinding plant upon any land owned or controlled by him and not to sell fire clay to any other persons during the life of the contract is a direct negative covenant, and a court of equity has jurisdiction to enjoin its breach, even though it might have no power to compel him to specifically perform his contract."

Equity may interfere to restrain the violation of a negative provision in a contract although it cannot enforce the affirmative one where the negative and affirmative provisions are entirely separate and distinct. *American Sand & Gravel Co. v. Chicago Gravel Co.*, 184 Ill. App. 509.

It is next contended by the defendant that a contract by which a seller, in consideration of the promise of the buyer to take such a quantity of a commodity as the buyer may require, promises to sell to the buyer and to no one else during a fixed period of time is void as being in restraint of trade and contrary to public policy. All contracts which on their face place a restriction upon the acts of the other party to the con-

tract are necessarily a restraint to a certain extent. If the effect does not destroy competition and is merely intended to increase the business of the parties to the contract, and is only incidental to and found necessary in order to protect the parties' interest as set forth in the contract and does not tend to promote a monopoly, such provisions do not make the contract illegal and void.

In the case of *Superior Coal Co. v. E. R. Darlington Lumber Co.*, 236 Ill. 83, the court said:

"A contract for the sale of coal by a mining company to a retail coal dealer, whereby it is agreed that if the dealer will buy coal of the mining company the latter will not sell coal at wholesale prices to any other dealer in the town, is not void as contrary to public policy or in restraint of trade, even though it may incidentally restrict competition in the sale of coal in the town. . . . And in *Brown v. Rounsavell*, 78 Ill. 589, it was held that a contract to furnish for sale a certain make of sewing machines, which provided that the purchaser should engage in selling said machine and no other and to buy the same of the seller and no other, was not in restraint of trade and void."

It is next contended by the defendant that the plaintiff in maintaining a suit in the municipal court and by securing a judgment on the note, such a suit is an election by the buyer, plaintiff here, to rescind the contract and the buyer cannot maintain a subsequent suit to recover damages and enforce the contract.

The provisions of the contract in relation to the note are practically as follows:

"Eighth: The party of the first part will advance to the party of the second part the sum of Two Thousand Five Hundred Dollars ($2,500.00) in cash, and will receive for the same the following:

"(a) A Promissory note in the sum of Two Thousand Five Hundred Dollars ($2,500.00), due on de-

mand, payable to bearer and signed by the party of the second part;

"(b) A refund or rebate in the sum of One Dollar and Fifty Cents ($1.50) per case upon the first one thousand (1000) cases purchased from the party of the second part, until the sum of One Thousand Five Hundred Dollars ($1,500.00) has been refunded or rebated. When the sum of Two Thousand Five Hundred Dollars ($2,500.00) advanced as aforesaid has been returned, refunded or rebated the aforesaid note shall be marked satisfied and returned to the party of the second part;

"(c) The holder of the said note may demand the return of the amount due upon the said note, and the party of the second part shall return the same either in cash or in so-called 'resale book matches' at the price hereinabove set forth, said option to be exercised by the party of the second part within thirty (30) days of receipt of said demand.

"Tenth: From the aforesaid sum of Twenty-five Hundred Dollars ($2,500.00), the party of the second part will retain the sum of One Thousand Dollars ($1,000.00) for a period of one year from the date of the execution of this agreement as security to the said party for losses incurred by the said party from:

"(b) Failure of the party of the first part to pay the party of the second part for shipments made under the terms of this agreement at the direction and under the order of the party of the first part;

"(c) If no losses have been incurred as above enumerated, at the expiration of one year from the date hereof, the said sum of One Thousand Dollars ($1,000.00) will be given to the party of the first part."

The note provided by the contract was a demand note for $2,500, payable to bearer. It is quite evident

that it must have been the intention of the parties that, under certain circumstances, suit could be brought on the note at once, otherwise it would not be a demand note. It was negotiable and if it was held by anybody to whom it was transferred, the right to sue would be available at any time. There is nothing in the contract which indicates that demanding payment on this note was a rescission of the contract. Under clause 10 of the contract the $1,000 security was to be retained for a year. The contract expressly provides for the return of $2,500, regardless of the security being held and suing on the note would not amount to a rescission. If no losses have occurred the contract further provides that $1,000 is to be returned to the plaintiff at the end of the year. The $1,000 which was to be kept as security could well be retained and have no connection with the amount to be paid on the note.

The case of *Associated Fruit Co. v. San Joaquin Fruit Growers and Shippers,* 68 Cal. App. 785, is a case somewhat similar to the case at bar. In that case the defendant agreed to deliver to the plaintiff 25 carloads of grapes at $5 per ton. Upon the execution of the contract plaintiff made an accommodation advance to defendants for $2,000, for which defendants gave their promissory note. The contract provided that an accounting should be made as soon as the grapes were sold by the plaintiff and the amount due therefor collected, and that plaintiff should repay itself the advances from such proceeds. The defendant broke the contract. Before suing on the contract to recover damages, plaintiff sued on the note and recovered a judgment which was paid. Then it sued for damages. It was contended that recovery on the note was an election which barred plaintiff from suing on the contract. The court allowed recovery, explaining that the cause of action on the note existed independently of the contract, saying:

"The doctrine of election of remedies is generally regarded as being an application of the law of estoppel. *(De Laval v. United Cleaners, etc., Co., supra.)* Thus in the case of executory sales of property of which the cases relied upon are examples, a party to the contract upon its breach may treat the contract as rescinded, and, if he has advanced money on it, bring an action for its recovery; or he may treat the contract as still in force and maintain an action in damages for the breach, but he cannot pursue both courses. Here, however, the rights relied upon are separate and distinct. Plaintiff was entitled in all events to the amount it had advanced as an accommodation, and for which a promissory note was given. It was likewise entitled to the profits arising under the contract. These claims might have been joined in a single action, but plaintiff was not bound to delay bringing its action upon the promissory note when due until such time as its rights to the commission provided in the contract might be determined. Separate causes of action could be maintained under these circumstances. (1 Corpus Juris 1111, 1114), and a resort to one constituted no bar to the other. No advantage was gained by the plaintiff in thus pursuing its remedies, nor was the defendant occasioned any damage thereby."

Certainly it cannot be contended that the plaintiff in this case by giving to the defendant $2,500 and taking its note therefore, which money was to be retained by defendant, did this for any reason or purpose other than that specified in the contract. When the defendant breached the contract, the plaintiff was entitled to the remedy and to his damages resulting from the wrongful breach by the defendant. When the money was given by the plaintiff to the defendant a merchantable demand note was taken therefor. An effort on the part of plaintiff to obtain a return of this money, which is quite independent of his claim for damages,

could not be construed as a denial of his right to relief upon the breach of the contract.

It is contended by the defendant that the court erred in the damages allowed to the plaintiff and that when a purchaser who sues a seller for failure to deliver a commodity purchased from the seller and resold by the purchaser, he cannot recover for loss of profits unless he establishes that he was unable to obtain a commodity on the market which would satisfy his customers.

The evidence shows that the plaintiff ordered all of the matches which it required in its business prior to the filing of the complaint in this case; that plaintiff ordered 1,398 cases, but that only 197 cases were delivered by defendant, leaving unfilled orders to be delivered to plaintiff consisting of 1,201 cases. Although it was claimed by the defendant it introduced evidence to account for its failure to comply with the terms of the agreement, which it claimed was due to the fact that the machinery of the defendant was unable to produce the matches in accordance with the orders of the plaintiff, nevertheless during the month of September, 1934, the defendant manufactured 330 cases of matches and during the month of October, 1934, it manufactured 348 cases, and that prior to the institution of these proceedings defendant delivered to persons other than the plaintiff 481 cases of matches and only delivered 197 cases of matches to plaintiff.

The evidence further shows that the reason the plaintiff did not go into the open market and obtain matches was because it was impossible to secure book matches with the name of the plaintiff corporation imprinted thereon.

The evidence further shows that the match industry is very limited because the machinery to produce book matches is scarce. All manufacturers have built their own machines and the chemical formula is a secret that

few people possess; that the Acme Match Company and one other match company are the only two companies who manufacture and assemble book matches in the State of Illinois and that these matches are not a general commodity on the market; that the making of book matches is a limited industry because few people have the formula of a safety book match.

There is no doubt the rule is that in a contract for the purchase and sale of a commodity, where one or the other breaches the contract, the duty of the injured party is to go into the open market and reduce its damages by purchasing therein, if the commodity is obtainable. But, if the article called for in the contract cannot be purchased on the market and the contract purchaser has made contracts of resale, the measure of damages is the difference between the contract price and the resale price. The evidence shows that the plaintiff could not get what it had contracted for in the open market. One of the purposes of this contract was to have the imprint of the plaintiff's name upon the matches so as to establish its product on the market and associate it with the name of the company. If the plaintiff purchased these matches from another company and was obliged to forego putting their name upon them, they would be deprived of the advertising benefits which would come to them as a result of having their name appear thereon. In addition to that the customers would be required to take other matches than those of the plaintiff, which no doubt would be prejudicial to the plaintiff. As was said by this court in the case of *Armeny v. Madson & Buck Co.*, 111 Ill. App. 621:

"The foregoing authorities establish that it is the duty of the vendee to exercise reasonable diligence in endeavoring to obtain the goods elsewhere, to do all that can reasonably be expected to mitigate the loss and act throughout as a reasonable man of business;

but if notwithstanding the use of reasonable diligence he cannot procure the article in the market, the measure of damages is the actual loss sustained by him, and if he has resold the article purchased to another, he is entitled to recover the difference between the price he agreed to pay and that at which he resold, subject to all proper allowances for expenses of carrying on the business of the vendee and similar items.'' In following this law we think the master and chancellor properly estimated the measure of damages and that no error was committed by them in this respect.

Complaint is made by the defendant that the injunction restraining the sale of book matches bearing the name of plaintiff and from soliciting and accepting orders from customers or accounts of the plaintiff or from interfering and competing with the business of the plaintiff; from directly or indirectly selling matches to any person or firm for the purpose of reselling the same to any consumer, is unlimited as to time and for that reason is erroneous. The original contract in this case was dated July 9, 1934, and provided that the contract should be binding for a period of five years from its date, which would extend to July 8, 1939. Manifestly, the injunction should not extend the contract for a longer period of time than that covered by the agreement of the parties. For that reason we believe the injunction order should be modified so as not to affect the rights of the parties after the date of the expiration of the contract.

For the reasons given in this opinion, the decree of the circuit court is affirmed as modified by changing the date as to the expiration of the injunction to read as of July 8, 1939.

*Decree affirmed as modified.*

HALL, P. J., and HEBEL, J., concur.