DENNIS LITWIN *et al.*, Plaintiffs-Appellees, *v.* TIMBERCREST ESTATES, INC., *et al.*, Defendants-Appellants.

First District (5th Division)　No. 60920

Opinion filed April 9, 1976.

David H. Locks, of Chicago (Gottlieb and Schwartz, of counsel), for appellants.

William F. Rickelman, of Farwell, Rickelman & Proteau, of Oak Park, for appellees.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from a judgment awarding damages against both defendants because of alleged defects in the construction of a residential house.

Originally, a contract was entered into in June of 1965 between defendant Timbercrest Estates, Inc. (Timbercrest) and James E. and Josephine B. Murphy. Under the provisions of that contract, Timbercrest agreed *inter alia* that "Construction will conform to and meet the requirements and building codes of Schaumburg, Illinois, * * *." Upon completion, the Murphys took possession in December, 1965. Shortly after occupying the premises, the Murphys complained about the width of the driveway and of a leak causing damage to the plastering. The record indicates that the leak was repaired, the plaster damage corrected, and the driveway widened. On December 13, 1968, the house was sold to plaintiffs, and Mr. Murphy testified that he had no claim or difficulty when the sale was made and that he had no intention then of asserting any claim against the builder. The evidence further indicated that at the time plaintiffs purchased the house, neither they nor their finance company discovered or were aware of any defects.

On November 27, 1970,[1] some two years after their purchase from the Murphys, plaintiffs requested and were given an assignment by the Murphys of an alleged chose in action for:

"[A]ny and all sums of money due or owing to us, and all claims, demands and causes of action of whatsoever kind which we may have against TIMBERCREST ESTATES, INC., a corporation, and MOR-WELL GENERAL CONTRACTORS, INC., a corporation, arising out of the contract for the construction of a house located at 431 Spruce Court, Schaumburg, Illinois entered into between said JAMES and JOSEPHINE MURPHY as the buyers and said corporations as the seller-builder, on June 7, 1965; * * *."

Subsequent to the execution of this assignment, plaintiffs brought suit

---

[1] The assignment bears two dates—December 13, 1968, and November 27, 1970. The record makes clear, however, that the 1970 date is the correct one, and plaintiffs have alleged that as the date of the assignment in their complaint.

against both defendants.[2] The complaint alleged a breach of the contract to construct the house for the Murphys; that the cause of action for this breach had been assigned to plaintiffs by the Murphys; and that plaintiffs will incur expenses in the completion and correction of the contract violations.

Motions to dismiss and for summary judgment by defendants were denied and, after a bench trial, judgment was entered for plaintiffs in the sum of $3,718—from which defendants bring this appeal.

OPINION

■■ Plaintiffs' action is predicated on alleged breaches of conditions in the construction contract—principally the failure of defendants to build in accordance with the requirements of the Schaumburg building code. However, inasmuch as plaintiffs were not parties to the original contract, their cause of action necessarily depends upon whether they acquired any rights against defendants by the Murphy assignment of the chose in action.

As a general rule, an assignment is a transfer of some identifiable property, claim or right from the assignor to the assignee. (*Buck v. Illinois National Bank & Trust Co.*, 79 Ill. App. 2d 101, 223 N.E.2d 167.) The assignment operates to transfer to the assignee all the right, title or interest of the assignor in the thing assigned. (*American Sand & Gravel Co. v. Chicago Gravel Co.*, 184 Ill. App. 509.) It is an elementary principle of law applicable to all assignments, that they are void unless the assignor has either actually or potentially the thing which he attempts to assign. (*North Chicago Street R.R. v. Ackley*, 171 Ill. 100, 111, 49 N.E. 222.) In any event, the assignee can obtain no greater right or interest than that possessed by the assignor, inasmuch as one cannot convey that which he does not have. *North Chicago Street R.R.; Mid-City Trust & Savings Bank v. City of Chicago*, 292 Ill. App. 471, 11 N.E.2d 617.

Our examination of the record herein leads us to conclude that at the date of the assignment some two years after the sale of the house, the Murphys possessed no chose in action. The record discloses that at the time of the sale to plaintiffs, the Murphys were unaware of any building code violations or other defects in defendants' performance under the contract. The parties agree that the alleged defects were latent and unknown to both buyer and seller at the time of the 1968 sale to plaintiffs. It is true that shortly after they took possession in December of 1965, the Murphys had complained of a leak causing damage to plaster and of the width of the drive. It appears, however, that the leak was repaired and the driveway widened, and Murphy testified that at the time of the sale to

---

[2] Although defendant Timbercrest alone entered into the contract to construct the Murphy house, both defendants have appeared and, in their joint answer, have admitted that they agreed to construct the house in question.

plaintiffs he had no claim or difficulty with the premises and had no intention of making any claim against defendants.

In view thereof, we can only conclude that on the day of the assignment, the Murphys had no actual or potential claim because of the alleged contract violations and that they had no chose in action which might be the subject of an assignment.

■■ Furthermore, to sustain an action for breach of contract, it must be established that there was a wrongful act and that a loss resulted therefrom. (*Town of Thornton v. Winterhoff*, 406 Ill. 113, 92 N.E.2d 163.) The measure of damages for such breach is the amount which will compensate the injured person for the loss which either a fulfillment of the contract would have prevented or the breach of it has entailed. (*Builders Windows, Inc. v. Ceco Steel Products Corp.* (N.D. Ill. 1962), 209 F. Supp. 376; 15 Ill. L. & Pr. *Damages* §145 (1968).) Where the claim of defective or deficient construction is presented, the proper measure of damages generally is the cost of remedying those defects and deficiencies. (*Hanavan v. Dye*, 4 Ill. App. 3d 576, 281 N.E.2d 398.) Thus, the person injured is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed—but not in a better position. 15 Ill. L. & Pr. *Damages* §145 (1968).

■■■ We believe it significant that the record indicates, and plaintiffs have agreed on oral argument here, that the Murphys received full fair market value for the house in 1968. Had the alleged contract violations been known to the parties at the time of the sale so as to cause a reduction in the amount received, a different issue would be presented, because the Murphys then would have been damaged to the extent that the building defects resulted in a decreased sales price. Likewise, had the Murphys continued to own the house and prosecuted this claim, the ordinary rule of damages for defective performance would apply. (*Hanavan.*) However, inasmuch as the Murphys did receive fair market value on the sale—that is, an amount not reduced because of any known defects, any further recovery by them for latent construction defects would place them in a better position than if the contract had been fully performed. See 15 Ill. L. & Pr. *Damages* §145 (1968).

We believe that after the sale of the property to plaintiffs for full value, the Murphys were in the same position they would have been in had the contract been performed as agreed. Thus, no damage from the breach was incurred by the Murphys and no claim, either actual or potential, survived the sale.

For the reasons stated, the judgment is reversed.

Reversed.

LORENZ, P. J., and DRUCKER, J., concur.