**Thomas J. LOWRANCE,
Plaintiff–Appellee,**

v.

**Stephen J. HACKER,
Defendant–Appellant.**

**No. 88–2128.**

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1989.
Decided Oct. 26, 1989.

$500,000 to his trading account to cover losses and margin calls during that period, a large debit balance remained, and Hacker refused to pay. Subsequently the account was liquidated to pay the debt, but Hacker still owed Rosenthal & Company $52,309.30 after the liquidation of his holdings. Pursuant to company policy, Rosenthal & Company collected the full amount from its employee Lowrance, and in return gave Lowrance an assignment of its claim against Hacker. The pertinent part of the assignment states that Rosenthal assigns to Lowrance

> "all of its right, title and interest in and to the following claims and accounts due it from: Stephen J. Hacker, Account No. 68906, $52,309.30. The total amount of said claims and accounts assigned hereby is $52,309.30."

The assignment document fails to recite a right to attorneys' fees. At the time the assignment was made, Rosenthal had not incurred any attorneys' fees.

Morris W. Ellis, Ellis & Ellis, Chicago, Ill., for plaintiff-appellee.

L. Andrew Brehm, James D. Adducci, Chicago, Ill., Michael B. Roche, Schuyler, Roche & Zwirner, Chicago, Ill., for defendant-appellant.

Before POSNER and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Plaintiff-appellee Thomas Lowrance is a commodities broker employed by the firm of Rosenthal & Company ("Rosenthal"). Rosenthal's policy is that brokers must make good any deficits in their customers' accounts which the customer refuses to pay. Stephen Hacker was one of Lowrance's customers under a commodity-trading agreement between Hacker and Rosenthal which called for Hacker to pay "reasonable attorneys' fees should an attorney be employed to enforce collection" of any deficits that might arise in his trading account. Hacker defaulted in his payments due to a number of ill-fated trades during the summer of 1984. In spite of the fact that Hacker contributed an additional

Lowrance contacted Hacker about the debt, and Hacker offered $13,000 in satisfaction of the full debt. Hacker sent Lowrance a check in that amount, with a notation, "Accord and satisfaction understood in our settlement agreement." Lowrance deleted that notation and substituted his own, accepting the check as partial payment only, and stating the balance of $39,-309.30 remaining on the debt. He then cashed the check. When Hacker refused to pay the balance, Lowrance sued in the Circuit Court of Cook County, Illinois, and Hacker removed the action to the federal district court for the Northern District of Illinois. Federal jurisdiction is based on diversity of citizenship, and Illinois law governs the resolution of this dispute. Judge Plunkett ruled against Hacker on his defenses of accord and satisfaction and "churning," and awarded Lowrance the $39,309.30, while reserving judgment on the issue of whether Hacker was liable for Lowrance's attorneys' fees. This court affirmed that judgment, *Lowrance v. Hacker*, 866 F.2d 950 (7th Cir.1989). While that appeal was pending, Judge Plunkett ordered Hacker to pay Lowrance $8,273 in

attorneys' fees. Hacker filed a timely notice of appeal arguing that the assignment to Lowrance did not include an assignment of right to attorneys' fees. In the alternative, Hacker argues that even if Lowrance is entitled to attorneys' fees, he is still not entitled to the part of the award compensating Lowrance for paying lawyers hired by Lowrance's principal attorney solely to help investigate Hacker's affairs.

## STANDARD OF REVIEW

Hacker's challenge to the award of attorneys' fees is based purely on interpretation of the assignment document. Assignments are to be interpreted in the same way as any other contract. *See Advance Process Supply Co. v. Litton Ind. Credit Corp.*, 745 F.2d 1076 (7th Cir.1984). The interpretation of an unambiguous contract is a question of law. *Pipe Fitters' Welfare Fund v. Mosbeck Ind. Equip., Inc.*, 856 F.2d 837, 840 (7th Cir.1988). This court's review is *de novo*. The challenge to the fees attributable to the investigating attorneys is a question of fact. The determination that those attorneys were employed "to enforce collection" involved facts outside the four corners of the commodity-trading agreement, and is therefore treated as a finding of fact. *See* J. Calamari & J. Perillo, *Contracts*, § 3–12, p. 124 (2d ed. 1977). Judge Plunkett ruled that the attorneys' fees were a part of the attempt to enforce collection, and were therefore included in Hacker's contract obligation. To prevail on this issue, Hacker must demonstrate that Judge Plunkett's finding was clearly erroneous. Fed.R.Civ.P. 52(b).

## DISCUSSION

This case calls for the application of principles of contract interpretation. The overriding goal of contract interpretation is to give effect to the reasonable expectations of the parties. *Schek v. Chicago Transit Auth.*, 42 Ill.2d 362, 247 N.E.2d 886 (1969); *National Distillers & Chem. Corp. v. First Nat'l Bank of Highland Park*, 804 F.2d 978, 982 (7th Cir.1986). We can conceive of no reason why Rosenthal would deny its employee Lowrance the right to have someone else reimburse him

the attorneys' fees he was forced to expend in the normal course of his collecting a debt due and owing. The purpose of the assignment from Rosenthal's point of view was not to do Hacker any favors, but only to secure payment of the debit balance in Hacker's account with the company. The purpose was to shift the burden of collection of Hacker's debt from the company to Lowrance. There is nothing in the record to reflect that Rosenthal had any intent to release Hacker from his bargain to pay the reasonable costs of collection of the debt Lowrance paid on Hacker's behalf pursuant to Lowrance's contract of employment.

The question to be faced, then, is whether Rosenthal's and Lowrance's intentions were adequately expressed in the Assignment. Judge Plunkett found that "all right, title and interest" meant all contract rights, including but not limited to the principal amount due Rosenthal. Hacker argues that the assignment should be read more closely. He argues (1) that the dollar amount stated as the value of the accounts limits the amount assigned; (2) that attorneys' fees were neither a "claim" nor an "account," and were therefore not assigned; (3) that no attorneys' fees were "due" at the time of the assignment and were therefore not assigned; and (4) that all doubt about the meaning of the terms of the assignment document should be resolved against Lowrance. Each argument relies on a technical construction of the language of the assignment document without regard to the intent of the parties to it. We reject this approach to contract interpretation, and we affirm the judgment of the district court.

The fact that the assignment document stated the dollar amount of the claim does not necessarily mean that the statement was intended as a limitation on any expenses incurred in enforcing the claim. The dollar amount was merely an accurate statement of the principal value of the claims and accounts due and owing and assigned as of the time of the transfer of collection rights from Rosenthal to Lowrance. That does not require us to hold that the instrument transferred only that

amount of the claims and accounts. We interpret the words "all right, title and interest" to refer to the account, including the right to any reasonable costs incurred in the collection of the same, and not to the specific dollar amount. If Hacker's interpretation were correct, the assignment would be nothing more than a nonrecourse draft on Hacker issued by Rosenthal. This was not a draft, but an assignment, and we hold that it included all rights in account number 68906, including not only the right to collect the principal amount owing, but also the related right to payment of attorneys' fees.

The contention that potential attorneys' fees are not a "claim" or an "account" because unmatured or contingent or unliquidated can be interpreted in two different ways. The first version is an argument that an uncertain obligation is not assignable. For this proposition, Hacker relies on *Litwin v. Timbercrest Estates, Inc.*, 37 Ill. App.3d 956, 347 N.E.2d 378 (1976). It was held there that a home seller could not transfer his right to sue the builder of the house to his buyer when the seller was not aware of the existence of any defects which would create a right to sue the builder. We do not agree that *Litwin* supports Hacker's proposition. Illinois cases hold that the most contingent asset of them all, an expectancy of an inheritance, can be validly assigned. *See In re Estate of Davis*, 126 Ill.App.3d 518, 81 Ill.Dec. 702, 467 N.E.2d 402 (1984). This suggests that the contingent character of an asset is irrelevant to its assignability under Illinois law. In our view, *Litwin* is distinguishable from the case before us. In *Litwin*, no one knew of any rights against the builder; in this case the principals to the contract all were aware or should have been aware of the fact that Hacker was obliged by contract to pay the fees. The right assigned was known but contingent, just like an expectancy.

The second version of the argument that attorneys' fees are not included in "claims and accounts" is a contention that attorneys' fees cannot be a claim or account before they ripen into a fixed obligation. Hacker cites to dictionary definitions to establish the meaning of the terms "claims" and "accounts." The appellant once more relies on a very narrow, illogical reading of these terms, rejected in the district court, and we join and reject this interpretation as well. *Shelton v. Andres*, 106 Ill.2d 153, 159, 87 Ill.Dec. 954, 478 N.E.2d 311, 314 (1985) (courts not bound to literal construction where intent of the parties would be defeated); *Schek*, 42 Ill.2d at 364, 247 N.E.2d at 888. The intent of the parties to the assignment is abundantly clear, and we refuse to interpret individual words in a document in isolation to defeat the clear intent.

This interpretation of Illinois law also disposes of Hacker's third argument, that the attorneys' fees were not yet "due" at the time of the assignment. Hacker owed Rosenthal a duty to pay reasonable costs of collection, and that duty was assignable even though the dollar amount of that duty had not yet been fixed. The words of the assignment, read in their proper context, carry through Rosenthal's and Lowrance's intention that it be assigned.

Hacker argues that the assignment document should be construed in his favor because he was not party to it, and Lowrance should be treated as the drafter. *TKO Equipment Co. v. C & G Coal Co., Inc.*, 863 F.2d 541, 545 (7th Cir.1988) (parties cannot use an unusual construction of a word to the detriment of third parties) (interpreting Indiana law). There is no basis in the record to support a conclusion that Lowrance rather than Rosenthal drafted the assignment document. We know of no case law requiring that we presume a party in Lowrance's position to have been the drafter. But even if Lowrance were considered to have drafted the assignment, the interpretation-against-the-drafter rule is used only as a last resort when other accepted avenues of contract interpretation have failed. *Lippo v. Mobil Oil Corp.*, 776 F.2d 706, 714 n. 15 (7th Cir.1985) (interpreting Illinois law). We refuse to utilize an unduly narrow construction of the terms of the assignment to defeat the intent of the parties to that instrument when those

words gave fair warning to third parties of what they truly intended.

We conclude that Hacker is liable to Lowrance for his reasonable costs incurred in obtaining reimbursement after fulfilling Hacker's legal obligation to Rosenthal & Co. We turn now to Hacker's argument concerning the amount of those costs. Hacker argues that fees paid by Lowrance's principal attorney to attorney Thomas Kolter for research into Hacker's degree of sophistication in the futures markets and to attorney Eric Ludwig for investigation of Hacker's financial condition were not reasonable costs of collection. The district court found that the research was relevant to countering Hacker's defenses. Hacker had argued that his poverty was one of the factors supporting his position that a bona fide dispute existed which would validate his accord and satisfaction defense. The district court found that fees for research into Hacker's financial condition by one of the investigators, Ludwig, were proper costs of enforcing collection, and were compensable. Because Hacker raised the issue of his financial condition as a part of his defense to Lowrance's suit to enforce payment, the district court was not clearly in error in finding that costs of an independent investigation into Hacker's financial condition were incurred to enforce collection. Similarly, Kolter's research into Hacker's degree of sophistication in the securities markets was found to be relevant to Hacker's defense of churning. The churning issue was raised by Hacker, and the district court was not clearly in error when it found that fees paid in combatting that defense were paid to enforce collection of the underlying debt. The judgment of the district court is

AFFIRMED.