## CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff,

### v.

## WESTINGHOUSE ELECTRIC CORPORATION, Defendant.

### No. 82 Civ. 3504(MEL).

United States District Court, S.D. New York.

Oct. 9, 1984.

As Amended Oct. 10, 1984.

Winthrop, Stimson, Putnam & Roberts, New York City, for plaintiff; Sutton Keany, David J. Long, Aileen Meyer, Bebe J. Anderson, Susan J. Kohlmann, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for defendant; Richard J. Davis, James W. Quinn, Joseph S. Allerhand, Ronald D. Reynolds, New York City, of counsel.

LASKER, District Judge.

Westinghouse Electric Corporation ("Westinghouse") moves pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.

P.") 12(b)(1) and 12(b)(6) to dismiss those portions of the first amended complaint which (1) request a declaratory judgment that Westinghouse is obligated to replace the steam generators at the Indian Point Power Plant, Unit No. 2 ("IP 2") operated by plaintiff Consolidated Edison Company of New York, Inc. ("Con Ed"), and (2) allege that Westinghouse breached its duty to warn Con Ed of defects in the IP 2 plant. The motion is denied.

In an earlier opinion, this court granted in part and denied in part Westinghouse's motion to dismiss the original complaint. *See Consolidated Edison Co. of New York v. Westinghouse Electric Corp.,* 567 F.Supp. 358 (S.D.N.Y.1983). Familiarity with that opinion is assumed.

### I. Replacement of the Steam Generators

Westinghouse's motion to dismiss the claim for a judicial declaration as to Westinghouse's obligation to replace the steam generators at the IP 2 plant is based upon the testimony of a senior Con Ed engineer, Samuel Rothstein, before the Atomic Safety and Licensing Board of the Nuclear Regulatory Commission ("NRC") on January 18, 1983. THE ASLB hearing was ordered to inquire into safety issues relating to the IP 2 plant, including the question whether degradation in steam generator tubes was creating a risk of a steam generator rupture. Rothstein testified, in essence, that as a result of corrective measures that Con Ed had taken, NRC requirements were being met and exceeded at IP 2 and that further regulatory measures to protect the public safety were unnecessary. Westinghouse contends that Rothstein's testimony establishes that the steam generators are operating adequately, and that consequently there exists no "actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201, as to Con Ed's request for a declaratory judgment requiring Westinghouse to replace the steam generators at IP 2.

Westinghouse relies upon, *inter alia,* the following portions of Rothstein's testimony:

—"Eddy Current Examinations indicated that the steam generator tubes were completely free of defects." (written testimony at 12)

—"The corrosion of the steam generators at Indian Point Unit 2 is essentially arrested; that is, the rate of change is hardly measurable. There is no pitting, cracking or other deterioration of any of the steam generator tubes. Tubes that have been significantly deformed as a result of the cumulation of corrosion products between the tubes and the support plates, (that is, dented) have been preventively plugged and removed from service. Based on experiences at other plants as well as Indian Point 2, it is improbable that any tubes with significant deformation have not been examined." (written testimony at pp. 12–13)

—"My conclusion is that the corrosion in the Unit 2 steam generators is essentially arrested ... My overall conclusion is that the steam generators are in good condition and should be capable of continued safe operation, and I recommend against implementation of the NRC proposed generic steam generator requirements at Indian Point 2 because I believe that those requirements are adequately addressed by the activities at Indian Point 2." (oral testimony, p. 6105)

—"I would say that if the current condition of the steam generator continues, the steam generator should serve the life of the plant." (oral testimony, p. 6106).

The Declaratory Judgment Act provides that in a "case of actual controversy within its jurisdiction" a federal court may "declare the rights and other legal relations" of a party. 28 U.S.C. § 2201. The "actual controversy" provision of the Declaratory Judgment Act incorporates the "case or controversy" requirement of Article III of the Constitution.[1]

---

1. *See Aetna Life Insurance Company v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937); *Muller v. Olin Mathieson Chemical Corp.,* 404 F.2d 501, 504 (2d Cir.1968).

Westinghouse argues that Rothstein's testimony undermines the existence of an Article III case or controversy regarding Con Ed's request for replacement of the steam generators, because the testimony admits that, as matters stand now, the steam generators will be capable of continued operation for the life of the plant. Accordingly, Westinghouse contends, Con Ed's request for replacement of the steam generators now rests on what constitutes a future contingency only—the possibility that at some date in the future the steam generators will fail and will then have to be replaced. A dispute resting on a future contingency, Westinghouse argues, does not constitute a justiciable case or controversy.

■ Westinghouse's theory, though ingenious, is untenable. It rests on an assumption that does not withstand scrutiny —namely, that Con Ed is not seeking replacement of the steam generators now, but is merely asking for a declaration that if their condition deteriorates in the future it will be entitled to replacement of the generators. As Con Ed points out, this is simply not the case. Con Ed is seeking a declaration that it is entitled to replacement of the steam generators now because of defects in the equipment. Although the Rothstein testimony provides factual material from which Westinghouse is entitled to argue that replacement is not necessary at present, by itself the testimony does nothing to eliminate the controversy between the parties. Westinghouse has not moved for summary judgment,[2] and it cannot obtain a ruling as to the factual merits of the claim for declaratory relief by way of the present jurisdictional motion.

## II. Duty to Warn of Defects in Other Plants

In our earlier opinion we reserved decision on the question whether a cause of action was stated by Con Ed's claim that Westinghouse breached a duty to warn Con Ed of defects that had arisen in other nuclear power plants with Westinghouse-supplied steam generators. Westinghouse now renews its motion to dismiss paragraph 63(b) of the Amended Complaint, which sets forth the allegations as to Westinghouse's breach of the alleged duty.

Paragraph 63(b) of the Amended Complaint states that Westinghouse breached its duty to exercise due care

"by negligently failing promptly to warn Con Edison of the possibility or likelihood of such problems occurring at the IP 2 Plant at such time as Westinghouse became aware of similar problems in the same type of steam generators, steam turbines, equipment, instructions and assistance sold to other utility customers and at such time as Westinghouse had data in its possession which showed that the IP 2 Plant and various of its components, as alleged, had experienced such problems."

In the earlier opinion we held that Con Ed had stated a cause of action under New York law for negligence in the performance of contractual services by its allegations that Westinghouse undertook to perform inspections of the steam generators for Con Ed and failed to inform Con Ed that it had discovered defects in the equipment. Since the parties had not specifically addressed the question whether the failure to warn of defects in other plants also stated a cause of action under this theory of tort law, we invited further briefing on the issue.

■ We will not repeat the discussion of New York law contained in the earlier decision. *See* 567 F.Supp. at 363–66. We have reviewed the parties' memoranda, and conclude that, in the context of the allegations of this complaint, there is no basis for rigidly distinguishing between a duty to warn of defects discovered in the inspection, and a duty to warn of the existence of known defects in similar equipment sup-

---

**2.** In view of the complexity of the issues and the qualifications in Rothstein's testimony, it is in any event highly unlikely that Rothstein's testi-

mony alone could form the basis for a summary judgment motion.

plied to other plants. We previously held that the allegations as to the failure to warn of defects discovered in the IP 2 equipment stated a cause of action because Westinghouse, having agreed to carry out an inspection of the plant, could reasonably be expected to convey accurate information to Con Ed as to whether there was cause for concern as to the condition of the generators. Bearing in mind the standards governing a motion to dismiss, see *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), we cannot say that under no circumstances can Con Ed establish that such a duty to inform it of the condition of the steam generators encompassed the duty to warn of known defects in similar equipment and defects found during inspection.

Accordingly, Westinghouse's motion to dismiss is denied.

It is so ordered.