(No. 60141.—)

FREDERICK F. SHELTON *et al.*, Appellants, v. HE-
LEN ANDRES, Appellee.

*Opinion filed March 22, 1985.—Rehearing
denied May 31, 1985.*

154

Patrick L. Duke, of Smith, McCollum & Riggle, of Flora, for appellants.

Feirich, Schoen, Mager, Green & Associates, of Carbondale, for appellee.

JUSTICE MORAN delivered the opinion of the court.

Plaintiffs, Frederick and Shirley Shelton, brought this action to quiet title to a seven-twelfths interest in the oil, gas and other minerals underneath an 80-acre tract of land in Wayne County. The defendant, Helen Andres, also claims title to the mineral interest. Her predecessor, S. D. Broyles, conveyed the 80-acre parcel to plaintiffs in 1962, but he reserved the mineral interest to himself, his heirs, and assigns. The interest was reserved "as long as there is production on said described real estate." Thereafter, he and other mineral owners entered into an agreement with an oil company whereby several tracts of land, including the subject parcel, were consolidated into a unit, referred to as the Sycamore Consolidated Unit (Unit), for the secondary recovery of oil.

The circuit court of Wayne County quieted title in plaintiffs, holding that defendant's mineral interest had terminated when the only oil well on the property ceased production in 1973. The trial court further determined that plaintiffs were entitled to the proceeds from the sale or production of oil, gas or other minerals produced from the tract since May 8, 1977. The court ordered that funds held by a trustee pursuant to an earlier order be paid to plaintiffs. A majority of the appellate court reversed, concluding that the production of oil from wells on other parcels in the Unit constituted production from the subject parcel, so as to preserve defendant's mineral interest. (122 Ill. App. 3d 1089, 1097.) We granted plaintiffs' leave to appeal (87 Ill. 2d R. 315). The sole issue concerns the construction of the 1962 deed from defendant's predecessor in interest to plaintiffs.

Plaintiffs contend that "production on said described real estate" as required by the deed ceased when the only oil well on the property stopped production in 1973. As such, they argue that, under the terms of the deed, the defendant's mineral interest terminated. Defendant asserts, however, that the production of oil from wells on other tracts in the Unit constituted production on the 80-acre tract under the deed. She contends that such unit production preserved her mineral interest during the more than three years when no wells were operating on the 80-acre parcel.

The evidence in this case consists of a stipulation of the parties, the deposition of the unit operator entered into evidence by agreement, and various exhibits considered by the trial court. The record reveals that immediately prior to July 16, 1962, S. D. Broyles owned the surface of the 80-acre parcel in question as well as an undivided seven-twelfths interest in the oil, gas and other minerals on and under the parcel. On that day, Broyles and his wife conveyed the tract to plaintiffs by

warranty deed. The *habendum* clause in the deed provided:

"The Grantor, S.D. Broyles expressly reserves from this conveyance and unto himself, his heirs and assigns, all of his undivided interest in and to all of the oil, gas and other minerals lying in, on and under, and that may be produced from said described real estate as long as there is production on said described real estate. When said production of oil on said described real estate ceases production, said interest owned by the said Grantor in the above described real estate reverts to the said grantees herein."

At the time of the conveyance, there was one producing oil well on the property.

On or about June 1, 1964, Broyles entered into a royalty owners' unitization agreement for the Unit. The agreement was between the Pure Oil Corporation and various persons who owned the rights to the oil, gas, and other minerals in several adjacent tracts of land. The agreement provided that the oil company would use a secondary recovery method known as water flooding to recover oil from the common pool underlying the tracts in the Unit. Each tract of land was allocated a percentage of the production from the Unit. The participation factor assigned to the 80-acre tract was approximately 13.7 percent of the oil produced from the Unit. All royalty payments were based on this participation factor irrespective if more, less or any oil was actually removed from a well or wells on a particular tract. The plaintiffs did not sign the unitization agreement. Broyles, on December 9, 1971, conveyed the seven-twelfths mineral interest by deed to himself and defendant, as joint tenants. Subsequently, Broyles died.

In May or June of 1973, the well on the tract was shut down and it ceased to operate. At that time no other wells were located on the property. Then on Sep-

tember 1, 1973, Hubert W. Rose purchased the oil and gas leases to the properties comprising the Unit including the lease to the 80-acre tract. Rose attempted to rework the well on the 80-acre tract, but his efforts were unsuccessful. Later that year, Rose removed all oil-producing equipment from that well, except the casing.

Subsequently, no oil-producing operations were conducted on plaintiffs' land until April 22, 1977, when Rose drilled a new well on the 80-acre tract. Production of oil from that well commenced May 8, 1977. Thereafter Rose deepened the original well on the property, and production of oil from that well resumed on February 18, 1978.

From late 1973 to May 8, 1977, when no oil was produced from a well located on the 80-acre tract, production from wells located on other lands comprising the Unit continued. During that time, the defendant was a party to the Unit agreement, and she regularly received royalty payments based on the percentage of Unit production allocated to the 80-acre tract.

The deed reserves to defendant a seven-twelfths interest in the oil, gas, and other minerals underneath the 80-acre tract "as long as there is production on said described real estate." The deed further provides that "[w]hen said production of oil on said described real estate ceases production, said interest owned by the said Grantor *** reverts to the said grantees herein." Thus, the deed created in the grantor, and ultimately the defendant, an interest in the minerals which was capable of enduring indefinitely, but which also was capable of being terminated upon the cessation of oil, or gas production "on said described real estate." In the latter situation, the plaintiffs' corresponding executory interest in the minerals would become possessory. *Morris v. Mayden* (1976), 35 Ill. App. 3d 338, 341. See generally 1 E. Kuntz, Oil and Gas sec. 15.8, at 354-55 (1962).

The appellate court majority concluded that off-tract production, from a unit which includes the 80-acre parcel, constituted "production on said described real estate" so as to extend defendant's mineral interest. It determined that the issue here was controlled by a provision found in "An Act in relation to oil, gas, coal and other surface and underground resources ***." (Ill. Rev. Stat. 1961, ch. 104, par. 62 *et seq.*, now Ill. Rev. Stat. 1983, ch. 96½, par. 5401 *et seq.*) Section 23.2(a) of the Act provides:

> "When two or more separately owned tracts of land are embraced within a pool or a portion of a pool suitable for secondary recovery methods, the owners thereof may validly agree to integrate their interest therein and to develop their land as a unit, and production from any tract in such established unit shall be regarded as production from all presently owned tracts or interests within such units." (Ill. Rev. Stat. 1961, ch. 104, par. 84b(a).)

The appellate court reasoned that, since section 23.2(a) was enacted before the execution of the deed from Broyles to plaintiffs, "the parties must be deemed to have incorporated the provisions of the statute into the terms of their transaction." 122 Ill. App. 3d 1089, 1095.

We do not agree that section 23.2(a) of the Act controls the outcome of this case. By its terms, section 23.2(a) applies only to owners who "validly agree to integrate their interest therein and to develop their land as a unit." (Ill. Rev. Stat. 1961, ch. 104, par. 84b(a).) We do not believe that the section was intended to alter, change, or govern the legal relationship under consideration here. Nevertheless, our disagreement with the reasoning of the appellate court does not end our inquiry. Instead, a determination of whether off-tract production from a well located in the Unit constituted production on the 80-acre tract necessarily turns on construction of the deed.

It is a well-established rule of law that, in construing deeds, the courts will attempt to ascertain the intention of the parties. (*Watts v. Fritz* (1963), 29 Ill. 2d 517, 521.) Generally, where there is no ambiguity, courts will look to the deed itself as the only criterion of the intention of the parties. (*Department of Transportation v. Western National Bank* (1976), 63 Ill. 2d 179, 183; *Dickerson v. Ray* (1960), 20 Ill. 2d 107, 118.) However, it is also true that an instrument should be given a fair and reasonable interpretation based on consideration of all its language and provisions. (*Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67.) In attempting to arrive at a fair and reasonable construction, "courts are not confined to a strict and literal construction of the language used, when such construction will frustrate the intention of the parties, gathered from a consideration of the whole instrument." *Shadden v. Zimmerlee* (1948), 401 Ill. 118, 123. Accord, *David v. Schiltz* (1953), 415 Ill. 545, 551.

Defendant asserts that off-tract unit production constitutes "production on said described real estate" since oil was being produced during the relevant time period from a unit which includes the 80-acre parcel. Plaintiffs construe the deed to require production from a well located on the 80-acre parcel. They therefore argue that defendant's interest terminated in 1973 when the only oil well on the property ceased production.

The precise issue raised by the parties has never been decided by this court. Courts in other jurisdictions have construed similar language to require production from a well or wells located on the parcel described in the deed. (See, *e.g., Campbell v. Dreier* (Tex. Civ. App. 1964), 382 S.W.2d 179, 182 ("The phrase 'from said land,' in its ordinary meaning, is the same as 'from wells located on said land' ").) Nevertheless, several courts, relying on various rationales, have reached the result urged by defendant.

In *Classen v. Federal Land Bank* (1980), 228 Kan. 426, 617 P.2d 1255, the defendant was the fee owner of two tracts of land. Defendant conveyed the land to plaintiffs, reserving a one-fourth interest in the oil, gas and other minerals for 20 years and "so long thereafter as oil, gas and/or other minerals \*\*\* are produced therefrom or the premises are being developed or operated." (617 P.2d 1255, 1257.) The plaintiffs were conveyed the other three-fourths mineral interest in the two parcels. One of the two parcels, with the agreement of both plaintiffs and defendant, was subsequently placed in a unit with other lands for the production of oil. Oil was produced from land within the unit, but no well was drilled on either parcel subject to defendant's mineral interest.

The court in *Classen* held that unit production extended the defendant's mineral interest as to the tract included in the unit, but not as to the other tract. The court explained:

> "The primary purpose of unitized operations is to permit proper and maximum development of the unit lands without reference to ownership boundaries and with a minimum of waste. These objectives may better be realized by the adoption of the rule that whenever a term mineral interest is voluntarily placed in a unit for the production of gas or oil and production is obtained on other land within the unit during the primary term, such production will extend the term mineral interest to the extent of the land and mineral interests included within the producing unit." (228 Kan. 426, 435, 617 P.2d 1255, 1262.)

Several other courts have reached the same result as *Classen*. See, *e.g., Panhandle Eastern Pipe Line Co. v. Isaacson* (10th Cir. 1958), 255 F.2d 669; *Spradley v. Finley* (Texas 1957), 302 S.W.2d 409; *Southland Royalty Co. v. Humble Oil & Refining Co.* (Texas 1952), 249 S.W.2d 914.

Although our reasoning differs somewhat, we agree that the result reached in the above-cited authorities is the correct one. A fair and reasonable reading of the deed here indicates that "production on said described real estate" was intended to include production from a unit which encompassed the 80-acre tract. Although the deed in question was phrased in terms of "production," it is reasonable to assume that the parties here intended the reservation to continue as long as the grantor, his heirs or assigns, reaped a financial benefit from oil and gas production from the property. As Professor Kuntz noted in his treatise on oil and gas law:

> "Although the duration of terminable interest may be expressed in terms of production from the premises, the parties were most likely thinking in terms of enjoyment of benefits. It is most likely intended in such instances that if the interest proves to be productive within the fixed term the interest is to endure as long as it yields tangible benefits in the form of royalty payments or payments in lieu of royalty, regardless of how the payments are computed." 1 E. Kuntz, Oil and Gas sec. 15.8, at 356-57 (1962).

Plaintiffs contend that the phrase contained in the deed requiring production "on said described real estate" means that production must come from a well located on the 80-acre tract. We disagree. As the appellate court noted, oil and gas are always produced from under the land, not on it. The source of the oil, at all relevant times, remained the same. There is no contention by plaintiffs that production was not continuous. To adopt the strict construction urged by plaintiffs would, in our opinion, frustrate the intention of the parties. Thus, in the absence of any contrary language in the deed, or subsequent actions of the parties amounting to a modification of the deed, we hold that production from another parcel in the Unit constitutes "production on said de-

scribed real estate" so as to extend defendant's interest in the minerals underlying the 80-acre parcel.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*