**LYONS SAVINGS AND LOAN ASSOCIATION, an Illinois Banking Corporation, Plaintiff,**

v.

**GEODE CO., a/k/a Geode Company, an Arizona General Partnership, E. Russell Riggs, Betty M. Riggs, Bradford R. Riggs, Anne Riggs, Robert C. Riggs, Sheree Riggs, Thomas S. Davies and Christine Davies, as individuals, Defendants.**

**No. 85 C 1873.**

United States District Court, N.D. Illinois, E.D.

Aug. 12, 1986.

Douglas Drenk, Guerard, Konewko & Drenk, Ltd., Wheaton, Ill., for plaintiff.

William M. Stevens, Rooks, Pitts & Poust, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

A loan contract between plaintiff Lyons Savings and Loan Association ("Lyons"), an Illinois banking corporation, and Geode Company ("Geode"), an Arizona general partnership, has resulted in this hotly con-

tested diversity lawsuit. In our opinion, we deal with five pre-trial motions filed by the parties. First, Lyons has moved for summary judgment on Count I of its complaint seeking declaratory relief under 28 U.S.C. § 2201 (Supp. II 1984), regarding interpretation of the loan contract. Second, Geode and the individual defendants,[1] all general partners of Geode, have moved to dismiss Counts II through IV, which purport to state claims of fraud, conspiracy to commit fraud and conversion and a civil claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act. The individual defendants have moved to dismiss Count I as well. Third, Lyons has moved to strike the defendants' memorandum in opposition to summary judgment. In the alternative, it has moved to strike certain portions of the supporting affidavits of E. Russell Riggs, one of the individual defendants, and John Randolph, one of the defendants' attorneys, which were attached to that memorandum. Finally, Lyons has moved under Fed.R.Civ.P. 12(c) for judgment on the pleadings with respect to the defendants' second affirmative defense.

We rule as follows: Lyons' motion to strike the defendants' memorandum in opposition to summary judgment is granted in part and denied in part. Its motion to strike the Riggs and Randolph affidavits is denied. Lyons' motion for summary judgment on Count I of the complaint is granted. Because issues related to the defendants' second affirmative defense are resolved through the summary judgment motion, we find the motion for judgment on the pleadings moot. Finally, all defendants' motions to dismiss Counts II through IV are granted, as is the individual defendants' motion to dismiss Count I. Judgment will be entered accordingly in compliance with the Court's opinion today.

## FACTUAL BACKGROUND

On November 7, 1983, Geode executed a Promissory Note promising to pay Lyons,

---

[1] The individual defendants are E. Russell Riggs, Betty M. Riggs, Bradford R. Riggs, Anne Riggs, Robert C. Riggs, Sheree Riggs, Thomas S. Davies and Christine Davies.

the payee, the principal sum of eight million dollars together with interest on the principal balance as provided for in the Note.[2] ¶ 2.1. The Note was secured by real property known as the Mountain View Medical Center located in Arizona. The Center is comprised of several buildings. The central dispute in this case is over the interpretation of ¶ 2.1(d) of the Note which states in pertinent part as follows:

*In the event of a sale of any individual portion of the Subject Premises to an independent third party, Lender [Lyons] shall receive 60% of sale proceeds.* Borrower [Geode] shall have the right to sell building A and/or building F in the project and the respective real property upon which such buildings are situated to third parties provided that the gross sales price for each building is not less than One Million Two Hundred Thousand Dollars ($1,200,000.00) .... In the event of Borrower's default subsequent to the sale of either buildings A and/or F Purchaser(s) shall have the right to cure the default. Lender shall have the right to review, approve or deny any real estate sale. Lender's approval shall not be unreasonably withheld. Sale proceeds as used herein shall mean the net amount remaining after full-repayment of all unpaid principal, and unpaid interest, all other amounts due under this Note and all escrow fees, title insurance premiums, recording fees and commercially reasonable Real Estate Brokerage Commissions paid in connection with such sale.

(emphasis added). In January 1985, Geode notified Lyons that it intended to sell certain portions of the real property securing the Note to an independent third party. Shortly thereafter, Lyons filed this suit. The sale was eventually completed, and the proceeds are now being held in a trust by stipulation of the parties. Geode disputes Lyons' entitlement to a percentage of the sales proceeds because it claims that the right to those proceeds was conditioned on Lyons' disbursement of what has been characterized as additional loan proceeds. Geode's contention is essentially that the loan amount was $6.5 million and Lyons had the option to release an additional $1.5 million in order to acquire an interest in any sales proceeds. However, Geode argues, the time for Lyons to exercise that option had passed by the time Lyons attempted to disburse those funds.

Before addressing the merits, this Court will deal with the two motions to strike filed by Lyons.

## I. MOTIONS TO STRIKE

### A. Motion to Strike Memorandum [3]

Lyons objects to the inclusion of several statements in Geode's memorandum in opposition to Lyons' summary judgment motion ("Geode's Memo") and therefore seeks to strike that memorandum *in toto*. It also seeks sanctions under Fed.R.Civ.P. 11 against William Stevens, the attorney who signed the memorandum in Geode's behalf. In the alternative, Lyons has moved to strike all or part of the supporting affidavits of defendant E. Russell Riggs and John Randolph, an attorney for Geode. We address Lyons' objections seriatim.

Lyons cites three separate portions of Geode's memorandum which it labels false. it also contends that an entire section of the memorandum is irrelevant and represents an improper attempt by Geode to impugn the credibility of Lyons' attorneys.

■ Lyons argues that Geode's statement that "Lyons admitted that its understanding of the Note is the same as

---

2. Although, as will soon be apparent, the parties disagree regarding the principal amount of the loan, ¶ 2.1 clearly states that that amount is $8 million.

3. We note that a motion to strike under Fed.R. Civ.P. 12(f) is not applicable to papers other than pleadings. The plaintiff seeks to have stricken a memorandum in opposition to its summary judgment motion here and such memoranda are not "pleadings" under the federal rules. *See* Fed.R.Civ.P. 7(a). Nevertheless, we shall consider this motion under our inherent authority to monitor the pre-trial proceedings in civil litigation.

Geode's" in a telegram and letter sent to Geode is false. *See* Geode's Memo at 4. The letter and telegram to which Geode refers are attached as exhibits to the Riggs Affidavit. The letter, dated August 27, 1984, was written by Laurence B. Miller, Chairman of the Board of Lyons, to E. Russell Riggs acknowledging Geode's request for "additional funding" in the amount of $1.5 million. The telegram is addressed to Geode's attorneys from Lyons' attorneys and indicates Lyons' desire to exercise what it characterizes as its "right of election" to disburse additional funds under ¶ 2.1(b) of the Note. The Court observes that neither of these documents represents an admission by Lyons of an interpretation of the Note that is either inconsistent with Lyons' current position or consistent with Geode's interpretation. The Court will read these documents for what they are worth, but the motion to strike this portion of Geode's Memo is denied.

█ Lyons also objects to a statement in Geode's Memo which states that Lyons' election to disburse additional funds was "untimely" under ¶ 2.1(b) of the Note and that Lyons never provided more than $6.5 million in loan proceeds. Geode's Memo at 4. This argument is basically over the meaning of ¶ 2.1(b) which is a matter for the Court to determine. Rather than accept either party's contentions with respect to the "timeliness" of "additional funding," we will rely on our own interpretation of the contract. Furthermore, with respect to the question of whether additional funds were disbursed, the Court is perfectly capable on a summary judgment motion to determine (1) if there is a genuine issue of fact as to the question of whether there was an additional distribution of loan funds; and (2) even if there is a dispute, whether this fact is material to our decision with respect to Count I. For these reasons, Lyons' motion to strike this portion of Geode's Memo is denied.

█ Next, Lyons asks the Court to strike Geode's statement that the parties filed an Agreed Motion to Amend or Clari-fy Court's Memorandum Opinion (the "Agreed Motion") in which Lyons conceded that the Note was ambiguous as to the face amount of the loan. Geode's Memo at 7–8. Lyons argues that its counsel never received a final version of the Agreed Motion (which was drafted by Geode's attorneys and reviewed and revised by Lyons' attorney) before it was filed with the Court. Geode responds that Lyons admitted both in its complaint and the Agreed Motion that the Note was ambiguous. This Court rejects both of Geode's arguments. The complaint at ¶ 11 states "There exists a real issue and controversy as to the interpretation of this Agreement and the consequent rights of the parties hereto." However, this statement as pled by Lyons clearly refers to a disagreement between the parties over the meaning of the contract such that relief under the Declaratory Judgment Act is appropriate. *See* 28 U.S.C. § 2201 (Supp. II 1984). It does not represent an admission that the contract terms are ambiguous. The Agreed Motion was filed after Judge Brian Duff issued an opinion denying the defendants' motion to dismiss for lack of personal jurisdiction. In that opinion, Judge Duff made two statements indicating that $8 million was actually loaned to Geode. The parties apparently agreed to submit a motion to clarify the opinion since there is an ongoing dispute over the amount of the loan and the distribution of additional funding. The Agreed Motion still does not constitute an admission by Lyons that the contract terms are ambiguous. Even if it were, the relevant dispute involved in the summary judgment motion on Count I regards ¶ 2.1(d) of the Note which contains no reference to the principal sum of the loan or the disbursement of additional funds. Accordingly, even though Geode's arguments in defense of its statements are spurious, we deny the motion to strike the arguments about ambiguity. The Court can independently evaluate the significance of the purported "admissions" without formally striking the corresponding allegations from the record.

■ Finally, Lyons objects to the conclusion of Geode's Memo which raises the following accusation:

> Now, the same attorneys who Geode paid to draft the Note represent Lyons in this lawsuit to construe the Note they drafted. Lyons' and Lyons' attorneys' position is unconscionable.... Lyons' attorneys agreed to withdraw the Second Amended Complaint against Geode's Chicago counsel *provided* Geode's Chicago counsel agreed not to move to exclude Lyons' counsel from this case.

Geode's Memo at 14. Apparently, as part of the negotiated deal between Lyons and Geode regarding the Promissory Note, Geode was to pay attorneys' fees for Lyons' attorneys who prepared the Note. Now, Geode has raised implications of some type of ethical violation which may have occurred resulting from this arrangement. Furthermore, it hints that it would have filed a motion to disqualify Lyons' attorneys had it not been coerced into inaction by Lyons' attorneys in exchange for an alleged promise not to file a second amended complaint which was to include Geode's attorneys as defendants under the RICO count. Lyons charges that all of these arguments are irrelevant to the summary judgment motion, and the Court is inclined to agree. Geode argues that these alleged events are relevant in that they indicate that Lyons is attempting to capitalize on a poorly drafted note which its attorneys prepared. Since no formal motion on Geode's behalf has been filed with respect to these alleged indiscretions on the part of Lyons' attorneys, we cannot consider any of these allegations regarding questionable behavior at this point. Accordingly, Lyons' motion to strike the part of Geode's Memo that raises questions regarding the ethics of Lyons' attorneys is hereby granted.

Lyons' motion for sanctions against William Stevens under Fed.R.Civ.P. 11 is denied at this time. It appears from this Court's review of the record that there has been an abundance of time-wasting pre-trial practice on both sides of this litigation. If the attorneys for the parties would have put as much energy into negotiating a settlement of this case as they have spent in hurling accusations at each other and filing unnecessary motions,[4] this litigation would have been resolved long ago—to the ultimate pecuniary benefit of all their principals.

### B. Motion to Strike Affidavits

■ Lyons also moves to strike all or part of two affidavits submitted in support of Geode's Memo. The first affidavit is that of E. Russell Riggs, one of the individual defendants and a general partner of Geode. The second affidavit is by John Randolph, one of Geode's attorneys who participated in the negotiation of the Note. Lyons wants Riggs' affidavit stricken because much of it concerns the negotiations which took place between the parties regarding the terms of the Note and Riggs' understanding of the Note. Lyons argues that these statements are irrelevant or represent legal conclusions instead of admissible facts. Randolph's affidavit, Lyons contends, is simply false. In that affidavit, Randolph asserts that one of Lyons' attorneys admitted during negotiations that Lyons was entitled to sales proceeds only upon release of the additional loan funds. Lyons has now submitted an affidavit contradicting that assertion. We deny the motion to strike. Although, as discussed below, the Court regards the content of the negotiations irrelevant, the fact that they took place is not. Furthermore, an affidavit should only be excluded where its irrelevance is clear. 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2738 (1983). As to Randolph's affidavit, Lyons has created a genuine issue with respect to what was said during the negotiations. However, the Court did not consider the content of the negotiations material to the summary judgment motion. Because, in the Court's discussion of summary judgment, we find the terms of the Note unambiguous with respect to the distribu-

---

**4.** Counsel are requested to consider Rule 11 of the Federal Rules of Civil Procedure and the recent cases thereunder before filing any further motions herein.

tion of sales proceeds under ¶ 2.1(d), it was unnecessary for the Court to look to extrinsic evidence regarding the intent of the parties. The Court denies the motion to strike the affidavits accordingly.

## II. LYONS' MOTION FOR SUMMARY JUDGMENT ON COUNT I

Summary judgment is appropriate only where the moving party shows that no genuine issue of material fact exists and that it is accordingly entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984). Summary judgment is particularly well-suited to cases where the basic dispute involves the interpretation of a contract. In the present case, the material facts are essentially undisputed. Furthermore, one of the few things the parties agree on is that the governing substantive law in this dispute is that of Illinois as provided by ¶¶ 3.4 and 3.9 of the Note.

■ Count I of Lyons' first amended complaint seeks a declaratory judgment clarifying the meaning of certain provisions in the Promissory Note regarding the payment of sales proceeds to Lyons upon the sale of the security interest. A suit under the Declaratory Judgment Act is appropriate for a contracting party seeking resolution of actual disputes regarding the interpretation of that contract. *See, e.g., Consolidated Edison Company of New York, Inc. v. Westinghouse Electric Corp.*, 594 F.Supp. 698 (S.D.N.Y.1984).

The fundamental dispute under the Note is over Lyons' entitlement to proceeds from the sale of part of the security interest, real property located in Arizona. Specifically, Lyons seeks declaratory relief to interpret the contract terms contained in paragraphs 2.1(b) through 2.1(d). Lyons pled in Count I that it believed the defendants had repudiated those portions of the contract dealing with the disbursement of sales proceeds and that "Defendants intend to deprive Plaintiff of the proceeds of a sale by preventing the sale from occuring [sic]." Complaint ¶ 14. It is now undisputed, however, that shortly after the complaint was filed the sale of certain portions of the real property was executed, since the parties entered into a stipulation filed with this Court allowing the partial disbursement of funds and the creation of a Trust Fund to hold the remaining funds being disputed in this litigation.

Because the language of the contract is crucial both to the resolution of this dispute and to understanding the parties' arguments, we reproduce here all of ¶ 2.1 of the Note.

2.1 FOR VALUE RECEIVED, GEODE CO., a/k/a GEODE COMPANY, an Arizona General Partnership, (the "Maker"), promises to pay to the order of Lyons Savings and Loan Association, an Illinois corporation with it's [sic] principal place of business at 450 West 55th Street, Countryside, Illinois ("Payee"), in legal tender of the United States of America, at the office of Payee or at such other place as the holder or holders hereof from time to time may designate, the principal sum of EIGHT MILLION AND NO/100 ($8,000,000.00) DOLLARS together with interest on the principal balance as follows:

(a) Interest is to be calculated daily on the principal balance under this Note, and the interest shall be computed from the date of this Note at the rate of 13.5% and shall be payable as follows:

Commencing on the first day of December, 1983 and on the first day of each month thereafter for the next Thirty-Four (34) months, interest shall be calculated at the rate of Twelve (12%) percent per annum, and Maker shall make monthly installment payments of SIXTY-SIX THOUSAND EIGHT HUNDRED NINETY-SIX AND no/100 ($66,896.00) DOLLARS per month on the principal balance outstanding hereunder from time to time. Final payment of SIXTY-SIX THOUSAND EIGHT HUNDRED NINETY-SIX AND no/100 ($66,896.00) DOLLARS shall be due and payable on November 1, 1986. In addition, inter-

est computed at the rate of one and one-half (1.5%) percent per annum on the principal amount outstanding hereunder shall be charged and added to the principal balance on a monthly basis, with no payments due until the maturity of this loan subject to the following paragraph.

Notwithstanding anything to the contrary stated above, this paragraph 2.1(a) is subject to the following: when net cash flow from the project is sufficient to pay the additional 1½% accrued interest rate on a monthly basis, the amount due on the first day of each month shall be calculated at 13.5% per annum with no accrued interest, and the monthly payment shall be increased from $66,896 to $74,480. In addition, all net cash flow available from the project which exceeds the amount necessary to cover the full 13.5% interest rate shall be first applied, prior to any other disposition, to pay any previously accrued interest. Only that amount of accrued interest remaining unpaid shall be due upon maturity of the Note.

b) Upon the occurance [sic] of leasing of at least 95% of the subject premises, or on November 1, 1984, whichever occurs first, the amount of the loan proceeds undisbursed shall be released to Maker at the election of Lender. As interest due in addition to that set forth in Section 2.1(a) above, when such remaining loan proceeds are disbursed, pursuant to this Section 2.1(b), the following amount shall be due and owing on a monthly basis: Lender shall receive 60% of available net cash flow after payment of operating expenses and debt service on this loan. All payments under this section shall be due and payable on the first day of each month along with the normal debt service payment.

c) If Borrower obtains refinancing of this Loan, Lender shall receive as additional interest an amount equal to 60% of refinance proceeds. Lender's percentage interest as herein stated shall

survive each and every refinance hereunder. Refinance proceeds as used herein shall mean the net amount remaining after full repayment of all principal, all unpaid interest, all other amounts due under this Note and all escrow fees, title insurance premiums, recording fees and commercially reasonable Real Estate Brokerage Commission paid in connection with such refinance.

d) *In the event of a sale of any individual portion of the Subject Premises to an independent third party, Lender shall receive 60% of sale proceeds.* Borrower shall have the right to sell building A and/or building F in the project and the respective real property upon which such buildings are situated to third parties provided that the gross sales price for each building is not less than One Million Two Hundred Thousand Dollars ($1,200,000.00). In the event of the sale of either building A or building F, Lender shall release such building(s) and the real property upon which such building(s) are situated from the lien of the Deed of Trust and Security Agreement securing repayment of the Loan upon payment to Lender of the equity participation and a release price determined by multiplying the unpaid principal balance of the loan by a fraction, the numerator of which shall be the number of leaseable square feet contained within the building to be released and the demoninator [sic] which shall be the total number of leaseable square feet contained within all of the buildings in the project. In the event of Borrower's default subsequent to the sale of either buildings A and/or F Purchaser(s) shall have the right to cure the default. Lender shall have the right to review, approve or deny any real estate sale. Lender's approval shall not be unreasonably withheld. Sale proceeds as used herein shall mean the net amount remaining after full-repayment of all unpaid principal,

and unpaid interest, all other amounts due under this Note and all escrow fees, title insurance premiums, recording fees and commercially reasonable Real Estate Brokerage Commissions paid in connection with such sale.

(emphasis added.)

Lyons argues that the language in ¶ 2.1(d) is unequivocal in that it entitles Lyons to sixty percent of the sales proceeds upon the sale of any individual portion of the "Subject Premises" (*i.e.*, the security interest). Geode responds that the first sentence in ¶ 2.1(d) must be read in context with the other subparagraphs of ¶ 2.1 and that the Paragraph as a whole provides that Lyons' equity interest in any additional proceeds (*e.g.*, from sales, refinancing, etc.) is conditioned on Lyons' disbursement of what has been termed "additional loan proceeds." Paragraph 2.1 clearly states that the principal sum of this Note is $8 million. Geode claims, however, that the loan contract actually provided for a $6.5 million loan and that Lyons had the option to disburse additional funds in the amount of $1.5 million at or before a later date, after which Lyons would become entitled to a percentage of the sales proceeds as well as an interest in net cash flow. It does not appear to be disputed that, at least initially, only $6.5 million was actually forwarded to Geode. However, the terms and conditions of any additional distribution of funds are in question.

■ Although the principal sum seems to be clear from the first part of ¶ 2.1, there are references in the Note to the disbursement of "additional funds." Furthermore, the payment schedule as described in ¶ 2.1(a) appears to be based on a principal sum of $6.5 million. Nevertheless, no language regarding the disbursement of additional funds appears in ¶ 2.1(d) and there does not appear to be any condition precedent to Lyons' entitlement to sixty percent of the sales proceeds on the security interest.

Under Illinois law, a contract is ambiguous if it is reasonably susceptible of more than one meaning. *See Pioneer Trust &*

*Savings Bank v. Lucky Stores, Inc.*, 91 Ill.App.3d 573, 575, 47 Ill.Dec. 36, 38, 414 N.E.2d 1152, 1154 (1st Dist.1980). However, " 'if the contract imports on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material item, and parol evidence cannot be admitted to add another term to the agreement.' " *Sunstream Jet Express, Inc. v. International Air Service Co., Ltd.*, 734 F.2d 1258, 1265 (7th Cir.1984) (*citing Pecora v. Szabo*, 94 Ill.App.3d 57, 63, 49 Ill.Dec. 577, 581–82, 418 N.E.2d 431, 435–36 (1981)). In the Court's view, the terms of ¶ 2.1(d) appear to be a complete expression of an agreement on sales proceeds distribution. Nothing else in the contract conflicts with this expression. Accordingly, we confine our interpretation to the language of the Note.

Geode makes several arguments in favor of its interpretation of the Note. First, it argues that the Note, taken as a whole, establishes a scheme which requires the disbursement of an additional $1.5 million as a condition precedent to any equity interest Lyons may have in the sales proceeds. Second, it argues that the Note is, at the very least, ambiguous with respect to sales proceeds and that summary judgment should be denied because there is a genuine issue of fact regarding the intent of the parties as to the distribution of those proceeds. Third, Geode contends that the loan agreement between the parties encompasses both the Note and a loan commitment letter sent by Lyons to Geode prior to the execution of the Note. The letter, Geode argues, indicates that the parties intended Lyons' sales proceeds interest to be conditioned on the release of additional loan funds. Next, Geode argues that under Lyons' interpretation of the Note there is a failure of consideration rendering the contract invalid. Finally, Geode proposes that the summary judgment motion should be denied because the Note has become non-recourse by its own terms. Because we find that none of these arguments supports Geode's position, Lyons' motion for summary judgment is granted.

In support of its argument that the Note, taken as a whole, must be interpreted to include a condition precedent requiring the release of additional loan funds prior to Lyons' entitlement to sales proceeds, Geode cites two general propositions of contract interpretation. First, Geode states correctly that as a general rule a promissory note, like any other contract, must be construed as a whole.[5] *See Shelton v. Andres*, 106 Ill.2d 153, 159, 87 Ill. Dec. 954, 957, 478 N.E.2d 311, 314 (1985). Second, it argues that a contract should be construed strictly against its drafter. *Lake Bluff Heating & Air Conditioning Supply, Inc. v. Harris Trust and Savings Bank*, 117 Ill.App.3d 284, 294, 72 Ill.Dec. 665, 672, 452 N.E.2d 1361, 1368 (2d Dist. 1983); *Scheduling Corp. of America v. Massello*, 119 Ill.App.3d 355, 361, 74 Ill. Dec. 796, 801, 456 N.E.2d 298, 303 (1st Dist.1983). However true these propositions are as a matter of Illinois contract law, they do not help Geode in its attempt to overcome the clear command of the first sentence of ¶ 2.1(d). Although a contract must be construed as a whole, an unequivocal statement which is not contradicted by any other provision in the contract cannot be deemed ambiguous. Geode's argument is essentially that because ¶ 2.1(b) appears to provide that Lyons would be entitled to sixty percent of the *net cash flow* from the Geode project upon the disbursement of "remaining loan proceeds," that that same condition precedent must apply to Lyons' entitlement to net sales proceeds under ¶ 2.1(d). Geode also argues that this condition controls ¶ 2.1(c), which deals with refinance proceeds. We disagree. Even if ¶ 2.1(b) does require Lyons to disburse some unknown amount of previously undisbursed loan proceeds before it can acquire an interest in a percentage of the net cash flow (which it is not clear that it does), the language cannot reasonably be read to apply as well to the other subparagraphs of ¶ 2.1. Each subparagraph appears to con-

trol a different circumstance independently of the other subparagraphs. There is no inherent ambiguity in the language of ¶ 2.1(d), and even though Geode disagrees with Lyons' interpretation, the ambiguity of a contract does not arise merely because the parties do not agree upon its meaning. *Harlem-Irving Realty, Inc. v. Alesi*, 99 Ill.App.3d 932, 936, 55 Ill.Dec. 181, 184, 425 N.E.2d 1354, 1357 (1st Dist.1981).

Geode's next argument is that even if the Court agrees that Lyons' interpretation of the Note is a reasonable one, summary judgment should be denied because there is a genuine issue of fact as to what the parties intended. This proposition might work if there were an ambiguity regarding ¶ 2.1(d). However, as discussed above, there is but one reasonable interpretation of the provisions of ¶ 2.1(d)—if the subject premises are sold, Lyons receives sixty percent of the sales proceeds as defined by the Note. Geode cites numerous ambiguities which would result from Lyons' construction. First, it argues that the Note is ambiguous with respect to the face amount of the loan and the terms of releasing undisbursed funds. There are certainly some problems in interpreting the terms of these elusive undisbursed loan proceeds, but they have nothing to do with interpreting ¶ 2.1(d) ·nor do they affect its clarity. Geode also contends that ¶ 2.1(d) means "one thing if it is taken out of context and something entirely different if it is read in the context of Paragraph 2.1 and the other provisions of the Note." Geode's Memo at 9. On the contrary, ¶ 2.1(d) states unequivocally that Lyons is entitled to sixty percent of net sales proceeds as defined therein and there is nothing to be found to the contrary in the other terms of the contract.

Geode also argues that there are ambiguities regarding whether Lyons' right to proceeds is conditioned on the sale of the individual buildings or of the entire security property. Geode's argument here is

---

5. Although the Uniform Commercial Code provides specific rules governing the interpretation of negotiable instruments, Ill.Rev.Stat. ch. 26, ¶ 3–118 (1985), the Note here is not negotiable because of its inclusion of additional promises. *See* Ill.Rev.Stat. ch. 26, ¶ 3–104(b) (1985). Thus, we rely on general Illinois contract principles in interpreting the provisions of the Note.

simply untenable. Paragraph 2.1(d) makes it absolutely clear that Lyons' right to sales proceeds is conditioned on the sale "of any individual portion of the Subject Premises." The next of Geode's proposed ambiguities is that Geode has the right to sell buildings A and/or F but that Lyons has the right to review, approve or deny any real estate sale. This does not create any ambiguity, it merely subjects Geode's right to sell to Lyons' approval. Geode's final attempt to demonstrate ambiguity is its claim that the Note is ambiguous as to the extent of Lyons' interest. The provisions of ¶ 2.1(d), according to Geode, allow Lyons to receive sixty percent of the sales proceeds even if that sale occurs before the loan has been repaid, but define sales proceeds as the net amount after full repayment of all unpaid principal, interest and other fees connected with the real estate sale. No ambiguity exists here either. Paragraph 2.1(d) merely defines the costs which may be deducted from the sales proceeds before Lyons calculates its percentage. That is, Lyons is entitled to sixty percent of the profits which are derived from the sale of the security property. The timing of the sale has nothing to do with the amount of the proceeds, since the "sales proceeds" can still be projected in light of the outstanding loan debt at the time of the sale. Accordingly, none of the ambiguities which Geode attempts to construct are sufficient to require the Court to deny summary judgment to Lyons regarding the terms of ¶ 2.1(d).

Geode argues, additionally, that the Note must be read in conjunction with a loan commitment letter sent from Lyons to Geode prior to the date of the Note's execution. In support of this claim, Geode relies on *Tepfer v. Deerfield Savings and Loan Association*, 118 Ill.App.3d 77, 73 Ill.Dec. 579, 454 N.E.2d 676 (1st Dist.1983). In *Tepfer*, a plaintiff class sued a savings and loan institution to challenge the charging of post-closing interest accumulated prior to the first installment payment on mortgage notes. The defendant commonly issued loan commitment documents which provided that interest would be calculated

from the date of closing. Furthermore, in a truth-in-lending disclosure statement signed by the named plaintiffs, the inclusion of post-closing interest was acknowledged. The notes themselves, however, did not state whether such interest was included as a cost to the borrower. In the case of the named plaintiffs, the loan commitment document was issued by the defendant several days before the Note was executed. The Illinois appellate court held that since these documents were all executed in the course of a single transaction, in the absence of evidence of a contrary intention, the instruments could be considered together as one contract. 118 Ill. App.3d at 81, 73 Ill.Dec. 579, 454 N.E.2d at 679.

The *Tepfer* case is distinguishable from the present case for a couple of reasons. First, there is evidence in the form of affidavits and copies of correspondence between the parties here that Lyons and Geode entered into negotiations regarding the terms of the Note *after* Lyons sent Geode the loan commitment letter on September 23, 1983. This clearly negates any intent by the parties to have the loan commitment letter and the Note, which was not executed until November 7, 1983, construed together as one contract. Moreover, in *Tepfer*, the Note was silent as to the disputed post-closing interest and the extrinsic evidence provided the necessary clarification. Here, the Court has already determined that the terms of the Note are unambiguous with respect to the disputed sales proceeds, and the loan commitment document, were we to consider it, would *conflict* with the clear terms of the Note. Thus, Geode's argument becomes one for the admissibility of parol evidence (*i.e.*, the loan commitment letter). However, "parol evidence is inadmissible to show that an obligation under a note, absolute on its face, is conditional." *Main Bank of Chicago v. Baker*, 86 Ill.2d 188, 199, 56 Ill.Dec. 14, 19, 427 N.E.2d 94, 99 (1981). No language in the Note suggests that the loan commitment letter is to be incorporated into the terms of the Note or that any

other agreement is relevant to the interpretation of the Note. Furthermore, at the very least, the provisions in ¶ 2.1(d) represent a partially integrated agreement which supersedes any inconsistent terms of prior agreements. *See Restatement (Second) of Contracts*, § 213 (1981). Accordingly, we will not look beyond the four corners of the Note to discern the intent of the parties regarding sales proceeds where the best indicator of that intent, the Note's language, so clearly sets forth the terms of payment.

 Geode's final two arguments in support of its interpretation of the Note are that (1) under Lyons' interpretation there is a failure of consideration for the disbursement of sales proceeds and (2) the Note has become non-recourse so that the only remedy available to Lyons is to seek possession of the security interest. These arguments can be dismissed quite easily. Consideration is a necessary element to the formation of a binding contract, however, the adequacy of that consideration shall not be a relevant factor. Furthermore, it is clear that a number of promises may be supported by a single consideration. *Restatement (Second) of Contracts*, § 80(1) (1981). In this case, Lyons disbursed loan proceeds as consideration for Geode's promise to return the principal along with specified interest charges as well as a promise to turn over to Lyons sixty percent of the net sales proceeds of any sale of the security property. The fact that there is no specific term indicating what consideration was given for the sales proceeds promise in particular is irrelevant to whether there was consideration necessary to form a valid contract.

 Geode's non-recourse argument fails because of the clear terms of ¶ 2.15 which states: "Neither the Maker nor its partners, successors or assigns shall have personal liability, either individually, jointly

or severally *for payment of principal sum and interest accrued thereon set forth in this Note,* after the Subject Premises is at least ninety-five (95%) percent leased or after November 1, 1984, which ever occurs first in time" (emphasis added). November 1, 1984, has come and gone, and the Note has accordingly become non-recourse as to the payment of principal and interest. However, this paragraph does not qualify the liability of the maker or its partners for other contractual promises made in the Note. Accordingly, the Court finds that the Note has not become non-recourse with respect to the distribution of the sales proceeds, and we enter summary judgment on behalf of Lyons and against Geode with respect to Count I of the Note. The Court holds that the terms of the Note provide that, upon the sale of any of the security property, Geode was required to pay to Lyons sixty percent of the net sales proceeds as defined in the Note. As there is no dispute between the parties that such a sale was executed by Geode, the proceeds should be distributed as provided by ¶ 2.1(d).

## III. GEODE'S MOTION TO DISMISS

The final matter is Geode's and the individual defendants' motion to dismiss. Geode moves to dismiss Counts II through IV, and the individual defendants move to dismiss all four counts against them. For the reasons stated below, the Court grants these motions in their entirety.

 The individual defendants moved to dismiss Count I on the ground that they were not individually liable on the Note, and that defendant E. Russell Riggs signed the Note solely in his official capacity as a general partner. In its response, Lyons conceded that the individual defendants should be dismissed with respect to Count I.[6] Accordingly, we do so.

---

6. Although Lyons concedes this aspect of defendants' motion, it is unclear why it does so. General partners are ultimately liable for the unsatisfied debts of the partnership. *See, e.g., Grass v. Homann,* 130 Ill.App.3d 874, 881, 85 Ill.Dec. 751, 756, 474 N.E.2d 711, 716 (4th Dist. 1984). Thus, if Geode is ultimately held liable for the sales proceeds as discussed above, the individual defendants could be subject to that judgment.

The remaining three counts which the defendants move to dismiss allege common law fraud (Count II), civil conspiracy to commit fraud and conversion (Count III) and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968 (1982 & Supp. II 1984) (Count IV). Geode and the individual defendants have moved to dismiss these counts. Their motion is premised primarily on Fed.R.Civ.P. 9(b), which requires that allegations of fraud be pled with particularity and Fed.R.Civ.P. 12(b)(6), which requires that allegations state a claim upon which relief can be granted. We agree that these three counts of Lyons' complaint are insufficiently specific, and the motion to dismiss is allowed.

Counts II and III purport to allege a count of common law fraud against each of the defendants and a conspiracy among all defendants to commit common law fraud and conversion. Although it is difficult to discern from the rather general allegations in these counts what the focus of the complaint is, Lyons appears to complain that Geode and the individual defendants concealed the "true funding requirements" for their Mountain View project in Arizona, and that they actually did not need the entire principal amount of the loan. Lyons claims that it has been damaged because its commitment of the $1.5 million in "undisbursed funds" to the Geode partnership prevented it from otherwise loaning the money to other potential borrowers. Count III also states that Lyons will receive less on the net sales proceeds than it was led to believe it was entitled to by Geode. Finally, Count III states that Geode and Riggs (which of the six Riggses named in the complaint is not clear) intend to deprive Lyons of its percentage of the sales proceeds and convert the same to their own use.

Even from a cursory review of these two counts, it is clear that Lyons is merely restating its claim for breach of contract as set forth in Count I. Furthermore, these counts are woefully inadequate in terms of pleading common law fraud and conspiracy to commit fraud and convert funds.[7] Lyons fails to allege with particularity the time, place or manner of any of the alleged misrepresentations or the identity of the individuals who allegedly misled Lyons. These types of allegations are the bare minimum necessary for sustaining a motion to dismiss under Fed.R.Civ.P. 9(b). *See, e.g., Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1311 (N.D.Ill.1984). As presently stated, these counts do not sufficiently put the defendants on notice so that they can adequately frame a responsive pleading. Furthermore, it is unclear to what extent Lyons has been damaged under these allegations. Under the terms of the Note, Lyons had the *option* of whether to disburse the "additional loan proceeds" upon the occurrence of certain conditions. *See* ¶ 2.1(b). Therefore, it is difficult to visualize how Lyons would have been harmed by its inability to loan the additional funds to a third party. Lyons was in the driver's seat. Thus, we find that Lyons has failed to plead fraud in the particularity as required by Fed.R.Civ.P. 9(b).

The Court also dismisses Lyons' RICO count on the basis that where a RICO claim is predicated on claims of fraud, the fraud allegations must comply with Rule 9(b). *McKee v. Pope Ballard Shepard & Fowle, Ltd.,* 604 F.Supp. 927, 930 (N.D.Ill.1985). Lyons' allegations in Count IV are based on its fraud claims in Counts II and III. Accordingly, the defendants' motion to dismiss Count IV is also granted.

## CONCLUSION

For the reasons stated in this opinion, the defendants' various motions to dismiss are granted, Lyons' motion to strike affidavits is denied, and its motion to strike the defendants' memorandum is granted in part. Lyons' motion for summary judgment on Count I against Geode is granted.

---

7. We note that the language in Counts II and III is almost identical and that Count II actually is phrased in terms of a conspiracy claim as well. To the extent that Count III is duplicative of allegations already made in Count II, it can be stricken as such.

Accordingly, since there is no disputed fact regarding the sale of security property, we hold that Geode is liable to Lyons under ¶ 2.1(d) of the Note for sixty percent of the net sales proceeds as defined therein. Lyons should submit a draft order to this Court within ten days stating the judgment amount in sum certain. It is so ordered.