HERSCHEL L. SCHWARM *et al.*, Trustees of the Noble Ervin Schwarm Trust, Plaintiffs-Appellants, v. MEXIA HOLDINGS, L.P., *et al.*, Defendants-Appellees.

Fifth District   No. 5—99—0054

Opinion filed November 5, 1999.

Richard J. Day, of Richard J. Day, P.C., of St. Elmo, for appellants.

Robert G. Coble, of Coble & Milone, of Flora, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiffs Herschel and Robert Schwarm are trustees of the Noble Ervin Schwarm trust, which owns a reversionary mineral interest in certain Fayette County real estate. Defendants Mexia Holdings, L.P. (Mexia), and Monarch Resources, L.L.C. (Monarch), purport to own one-half of the mineral interests in said real estate by reason of a mineral deed from Arl Schwarm and Nellie Schwarm, dated October 1938. Defendant Marathon Oil Company (Marathon) is the purchaser of crude oil and gas from the lease in question. Plaintiffs filed a complaint seeking a declaration that the mineral deed was expired because no oil had been produced from the premises since 1970. The trial court entered summary judgment in favor of defendants. We affirm.

In this case there is no dispute as to material facts; only the trial court's interpretation of the law is at issue, namely, whether the mineral deed had expired and the interest had reverted to the grantors. Pursuant to section 2—1005 of the Code of Civil Procedure, any party may move with or without supporting affidavits for a summary judgment in his or her favor for all or any part of the relief sought.

735 ILCS 5/2—1005 (West 1998). In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. See *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1214-15 (1992); *In re Estate of Whittington*, 107 Ill. 2d 169, 177, 483 N.E.2d 210, 215 (1985). In appeals from summary judgment rulings, the reviewing court conducts a *de novo* review. See *Jewish Hospital v. Boatmen's National Bank*, 261 Ill. App. 3d 750, 755, 633 N.E.2d 1267, 1272 (1994).

The mineral deed conveyed from Arl and Nellie Schwarm conveyed a one-half interest in and to "all of the oil, gas[,] and other minerals in and under and that may be produced from the following described lands: *** 37.15 Acres." Typed one line below the legal description on the form mineral deed was the following text:

> "IT IS AGREED THAT THIS MINERAL DEED SHALL BE IN FULL FORCE AND EFFECT FOR A PERIOD OF TWENTY (20) YEARS FROM THIS DATE AND AS LONG THEREAFTER AS OIL OR GAS, OR EITHER OF THEM, IS PRODUCED FROM SAID PREMISES."

Also included in this mineral deed was the following language:

> "*This sale is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease of record heretofore executed*; it being understood and agreed that said Grantee shall have, receive[,] and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties, and other benefits which may accrue under the terms of said lease insofar as it covers the above described land from and after the date hereof, *precisely as if the Grantee herein had been at the date of making of said lease the owner of a similar undivided interest in and to the lands described and Grantee one of the lessors therein.*" (Emphasis added.)

Prior to the making of this mineral deed, Arl and Nellie Schwarm, as lessors, executed an oil and gas lease in favor of the Ohio Oil Company, as lessee, covering 162.62 acres, including the premises that are the subject of the mineral deed. That oil and gas lease contained the following language:

> "*If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety* and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage." (Emphasis added.)

The affidavit of Lowell Whitehead, attached to plaintiffs' complaint, asserts that he has lived within two miles of the subject real estate for over 40 years and that he is familiar with the oil production on the 37.15 acres. Whitehead testified that upon his personal observation and recall, oil and gas production ceased on the real estate prior to 1970. This affidavit was not disputed. Based on the nonproduction of minerals from the 37.15-acre tract, plaintiffs assert that the term mineral deed, as assigned to defendants, has expired by its own terms and that said interest has reverted to plaintiffs, as successors in interest to Arl and Nellie Schwarm.

In its order granting summary judgment in favor of defendants, the court stated as follows:

> "The original conveyance was subject to the prior lease with entireties clause. Since production continued on other parcels and income was divided proportionally to the parcel in question, production did not cease as argued by plaintiffs. Consequently, the interest did not revert, as plaintiffs contend, to grantors. For these reasons the court holds and orders that the mineral interests of defendants are still valid ***."

■ In construing a deed, the overriding concern is to ascertain and give effect to the intention of the parties. See *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 467, 575 N.E.2d 548, 551-52 (1991). In determining the intention, it is necessary to consider the instrument as a whole, giving effect to every word and rejecting none as meaningless or repugnant, if it can be done without violating any positive rule of law. See *Gelfius v. Chapman*, 118 Ill. App. 3d 290, 292, 454 N.E.2d 1047, 1048 (1983). Absent an ambiguity in the deed, the intention of the parties must be discerned solely from the language of the instrument, without the consideration of extrinsic factors. See *Shelton v. Andres*, 106 Ill. 2d 153, 159, 478 N.E.2d 311, 314 (1985).

Plaintiffs agree that the intent of the parties to the original mineral deed must control. Plaintiffs argue that two factors in particular evidence the grantors' intent that the interest in the 37.15 acres revert to the grantors if production ceased after the 20-year term. The first factor plaintiffs point to is the fact that the Schwarms executed three separate mineral deeds for three separate tracts with the same reversionary clause to the same grantee, instead of conveying the interests in a single mineral deed. Plaintiffs argue that had the grantors intended to allow for pro-rata distribution of royalties if there were production on any of the tracts, they would have included all of the tracts and the respective interests in a single mineral deed. Plaintiffs maintain that the contemporaneous execution of three separate deeds to the same grantee, when all three parcels were included

in the original oil and gas lease, leads to the reasonable inference that the parties intended to treat each tract separately with regard to the reversionary interest. Plaintiffs also argue that because the mineral deed's term-limitation-period provision is in all capital letters, this evidences the grantors' intent that the interest was to revert to the grantors if production ceased after the 20-year term.

■ Absent an ambiguity in a deed, the intention of the parties must be discerned solely from the language of the instrument, without the consideration of extrinsic factors. See *Shelton v. Andres*, 106 Ill. 2d 153, 159, 478 N.E.2d 311, 314 (1985). No one argues that there exists an ambiguity in the deed or the lease at bar. Therefore, plaintiffs' argument in support of determining the intention of the grantors, that there were three deeds executed simultaneously, is of no consequence to our consideration. Absent an ambiguity, or assuming an ambiguity, absent evidence as to why three deeds were executed, we cannot suppose facts. See *Shelton*, 106 Ill. 2d 153, 478 N.E.2d 311. Moreover, we cannot infer meaning as to the grantors' intent merely because the typed portion of the form deed is in capital letters. Thus, we are left with the lease and the deed for consideration.

There is little case law to guide our decision; however, the parties have cited the case of *Shelton v. Andres*, 106 Ill. 2d 153, 478 N.E.2d 311 (1985), which raises an issue similar to that at bar. There, the plaintiffs brought an action to quiet title to seven-twelfths of the interest in and to the oil, gas, and other minerals underlying an 80-acre tract. The defendant claimed ownership of the same interest. S.D. Boyles conveyed the 80 acres to the plaintiffs in 1962 but reserved the mineral interest to himself, his heirs, and assigns. The interest was reserved "as long as there is production on said described real estate."

■ Thereafter, Boyles and other mineral interest owners entered into an agreement with an oil company whereby the subject tract of land and other tracts were consolidated into the Sycamore Consolidated Unit. It was undisputed that in 1973, the oil well on the 80-acre tract was shut down and ceased to operate. The Illinois Supreme Court held that a determination of whether off-tract production from a well located in the unit constituted production on the 80-acre tract turns on the construction of the deed. In making its decision, the supreme court cited language from the Kansas Supreme Court, which we find pertinent to the circumstances at bar:

> "The primary purpose of unitized operations is to *permit proper and maximum development of the unit lands without reference to ownership boundaries* and with a minimum of waste. These objectives may better be realized by the adoption of the rule that *whenever a term mineral interest is voluntarily placed in a unit* for the

production of gas or oil *and production is obtained on other land within the unit* during the primary term, *such production will extend the term mineral interest* to the extent of the land and mineral interests included within the producing unit." (Emphasis added.) *Classen v. Federal Land Bank*, 228 Kan. 426, 435, 617 P.2d 1255, 1262 (1980).

The supreme court reasoned that it is reasonable to assume that the parties intended the reservation of oil and gas rights to continue as long as the grantor, his heirs, or assigns reaped a financial benefit from oil and gas production from the property. Therefore, the court held that the production of oil from wells on other tracts in the unitized pool constituted production on the 80-acre tract under the deed.

■ In the case at bar the deed states that it shall be in full force for 20 years and as long thereafter as oil or gas is produced from said premises. There is no dispute that the deed was executed subject to the oil and gas lease, which included the 37.15 acres, and contained an entirety clause:

"[T]he premises *** shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety ***."

Because the parties executed the deed and voluntarily subjected that deed to the provisions of the oil and gas lease, production under the oil and gas lease necessarily extended the term mineral interest. The intention of the parties to the deed was that they were subject to the lease, which covered 162.62 acres. Given apparent continuous commercial production under the oil and gas lease, which encompasses the 37.15-acre tract by way of the entirety clause, we hold that production from another parcel within the 162.62 acres extended defendants' interest in the minerals underlying the 37.15-acre tract.

On appeal the parties refer to a communitization agreement. Plaintiffs argue that they do not believe that the communitization order had any effect at all upon preserving any production on the other parts of the acreage or of affecting the one-half interest in the minerals defendants claim here. Given our decision here, and plaintiffs' belief that the agreement had no effect whatsoever, we need not consider whether the communitization agreement had the effect of extending the primary term of the oil and gas lease.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

RARICK, P.J., and WELCH, J., concur.